# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| STEPHANIE J. MALONEY, EVERETTE D. MALONEY, and ALL OTHERS SIMILARLY SITUATED | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE |
| | ) | NO. 2:20-cv-00191-SCJ |
| TALLULAH RIVER CO., INC.; RANDOLPH JACKSON; PATRICIA JACKSON; RIVER FALLS AT THE GORGE, INC.; DANA PACCIOTTI; SHEA SMITH; ROBERT GAYLE; TORRI GAYLE; and WINDY SKY RENTALS LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANTS RIVER FALLS AT THE GORGE, INC.,
## DANA PACCIOTTI, AND SHEA SMITH

Ranse M. Partin
James T. Cox
CONLEY GRIGGS PARTIN LLP
4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327-3007

*Attorneys for Defendants Tallulah River Co., Inc., Randolph Jackson, Patricia Jackson, River Falls at the Gorge, Inc., Dana Pacciotti, and Shea Smith*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT .................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT AND CITATIONS OF AUTHORITY ...................................................... 10

I.    Plaintiffs' Fraud Claims Are Barred By Res Judicata (Count II). ............. 11

      A.    Elements One, Two, And Four Of Res Judicata Are Readily
            Apparent ........................................................................................ 13

      B.    Mr. and Ms. Maloney Were And Remain In Privity With Both
            Mr. Thomsen and TRMR. ............................................................. 15

II.   Plaintiffs Fail To State a Claim That River Falls At The Gorge, Inc.,
      the Gayles, Windy Sky Rentals LLC, Dana Pacciotti, Or
      Shea Smith Aided and Abetted Fraud. (Count III) .................................... 18

CONCLUSION ................................................................................................... 19

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is a real estate dispute over one timeshare interest that the two plaintiffs mischaracterize as a criminal enterprise. The Maloneys, in 1989, paid $500 down for a 1/5000 timeshare interest in a 68-acre campground in northeast Georgia. A Georgia Superior Court, however, has already issued an order granting summary judgment on an identical fraud claim, making findings of facts as to many of the same facts and parties in this Complaint, and involving the same counsel. The Superior Court judge found nothing nefarious -- and no fraud by the Jacksons -- in the ordinary real estate transactions behind both of these cases.[1] **Ex. A**, Order on

_____

[1] Defendants attach exhibits to their motion to dismiss, and reference exhibits to the Complaint. While generally, the Court "may not consider matters outside the pleadings without converting the motion to a motion for summary judgment," *Redding v. Tuggle*, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *5 (N.D. Ga. July 31, 2006), adopted at *1, the Court "need not make this conversion when considering a document attached to the complaint or to a motion to dismiss if 'the attached document is (1) central to the plaintiff[s'] claim and (2) undisputed,' " *Barber v. Rubin Lublin, LLC*, Civil Action File No. 1:13-CV-975-TWT, 2013 WL 6795158, at *3 (N.D. Ga. Dec. 20, 2013) (citation omitted); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam) (noting a court may consider an exhibit on a motion to dismiss if the exhibit is "central to the plaintiff's claim and the authenticity of the document is not challenged"). Moreover, the documents are public record, and "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Halmos v. Bomardier Aerospace Corp.*, 404 Fed.Appx. 376, 377 (11th Cir. 2010) (unpublished) (citations omitted). Finally, "[a] plea of res judicata or of estoppel by judgment should allege all facts

1

Motions for Summary Judgment, *Tallulah River Co., Inc. v. North Georgia Mountain Investment Group, LLC, et al*, Superior Court of Rabun County, Case No. 2014-CV-0150C (July 19, 2017) (discussed below).

The Maloneys, despite this previous ruling in a lawsuit where they were present and Ms. Maloney testified at trial, now assert River Falls at the Gorge, Inc. and its owners, the Jacksons' daughters Shea Smith and Dana Pacciotti (all three collectively referred to as the "Daughters"), aided and abetted the fraud claim that has already been rejected by the state court. Moreover, the Maloneys brazenly allege in Count IV that all Defendants participated in a criminal enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), based on that same, discredited fraud claim.

Though not named parties in the prior action, the Maloneys are privy with the prior counter-claimants for at least three reasons: (1) the Maloneys had, and continue to have, substantive legal relationships with the prior action's defendants / counter-claimants; (2) the Maloneys had some control over the litigation in which the prior judgment was reached; and (3) the Maloneys are now bringing this action as the designated representative of a party to the prior adjudication. All Defendants join in

---

and exhibit all the record essential to show that the plea is meritorious." *Smith v. Wood*, 115 Ga. App. 265 (1967).

this res judicata argument, and the Co-Defendants not party to this brief incorporate this argument by reference in their brief, filed this same date.

Even if res judicata is not found controlling, Count III should still be dismissed because Plaintiffs have failed to state a claim recognized under Georgia law or for which they could recover.

## STATEMENT OF FACTS[2]

In 1989, Randy Jackson and his wife Pat purchased a 68-acre campground in Rabun County, Georgia, out of foreclosure for $375,000.  ¶ 28-30 (all citations to ¶ alone are to the Complaint).  The Jacksons formed Tallulah River Company, Inc. ("TRC") to own and operate the campground.  ¶ 30.  The prior owner had developed the campground around 1984, and, as part of the business model, created a timeshare business.  ¶ 29-32.  The campground ownership could be sold into as many as 5,000 "undivided interests," called "UDIs," although nowhere near 5,000 UDI's were ever sold under any of the campground's owners.  ¶ 29-32.  At the Jackson's 1989 purchase, the prior owner had sold 127 UDI's to various individuals, with the UDI's governed by 1984 real estate covenants recorded against the campground.  ¶ 33, 98.

---

[2] For purposes of this motion only, Defendants accept as true the factual allegations in the Complaint.

The Jackson's purchase transferred the remaining 4,873 UDIs to their company, TRC.  ¶ 32.  The Jacksons did not create this UDI concept for the campground.

Over the next ten years, the Jacksons continued the previous owners' business model, selling additional UDI's and running the campground.  ¶ 36.  As stated in the real estate covenants, TRC reserved the right "to operate and maintain its business, promotion, and sales function in and upon the Property or improvements thereon," until 99% of the UDI's had been sold.  Compl. Ex. J-16.  There is no allegation that anywhere close to 99% of the UDI's were ever sold.  According to the covenants, TRC's business activities could operate outside of and without the control of the club, which consisted of the UDI holders.  *Id*. Ex. J-16.  Moreover, when the Jacksons sold the campground in 1999, TRC owned well over a majority of the 5,000 UDIs.  ¶ 32, 36.

In October 1989, the Maloneys purchased one UDI from TRC.  TRC properly executed in the Maloneys favor a warranty deed evidencing their UDI, and had the deed recorded.  *Id.* Ex. A-1.  The Maloneys paid $500 and financed $4500.  *Id*., Ex. A-3.  The Maloneys financed $2500 of the $4500 through a 0% interest promissory note to pay $2500 the following November to TRC, that also included a deed to secure debt for this amount.  *Id.*, Ex. A-2 and A-5.  TRC also provided the Maloneys with the required U.S. Department of Housing and Urban Development ("HUD")

settlement statement form.  *Id.*, Ex. A-4.  The Maloneys' warranty deed expressly stated that it "is made subject to that certain Declaration of Restrictions for said real estate [the 1984 Covenants]."  *Id.*, Ex. A-1.

In 1994, the Jacksons restated and re-recorded the covenants that governed the campground and the UDI owners' interests from that point onward.  ¶ 99-100.[3] The 1994 covenants grant all members a non-exclusive right to use the property, subject to payment of all dues and assessments, and subject to the covenants.  Compl. Ex. J-6.  The covenants created a club consisting of the UDI holders, which had the power to levy and collect fees, dues, taxes, and assessments from its members.  *Id.* Ex. J-9.

The dues covered the developer's costs, administrative overhead, maintenance of the property and facilities, electricity, water, trash collection, security, maintenance personnel, insurance, property, taxes, salaries, and management profit.  *Id.* Ex. J-18.  If a member failed to pay his or her dues, the club had the right to foreclose on his or her interest.  *Id.* Ex. J-25.  In addition to paying

---

[3] Three sets of covenants have been recorded against the campground:  1984, 1994, and 1999.  ¶ 98.  The Rabun County Superior Court held in 2017 that the operative covenants on the campground are the 1994 Covenants.   ¶¶ 90-100.  For purposes of this motion, no material difference is ascribed to the various versions of the covenants.  The existence of the 1984 Covenants, however, shows that covenants and restrictions existed on the campground when the Maloneys bought their UDI, of which they received notice.

dues, members were responsible for fees to use the facilities and any special assessments levied against members of the club. *Id*. Ex. J-19. Notably, the Maloneys do not allege they have paid, or been asked to pay, any of these costs, which they are legally responsible for, since the Jacksons had to take back ownership in 2014.

In April 1999, after owning and operating the campground for ten years, the Jacksons sold the campground to Myron and Cecilia Smith. *Id*., Ex. B-1. The Smith's formed Tallulah River Mountain Resort, Inc. ("TRMR" or "the Smith's company") for the purchase. ¶ 45. The sale included the Jackson's company, and the right to use the name, Tallulah River Company. *Id*., Ex. B-2, ¶ 4. The $3,000,000 sale was executed with a $300,000 down payment and the remainder financed through a promissory note and security deed for the remaining $2,700,000. ¶ 46. As security for the Jacksons owner financing, the sales contract required the Smiths to set aside a certain percentage of gross cash sales collected through marketing efforts and a certain percentage of gross cash collected under a "dues buy-out program." *Id*. Ex. B-3, ¶ 8(a). This "dues buy-out program" occurred after the Jacksons sold the campground (¶ 46), as confirmed by the Maloneys' receipt from TRMR, the Smith's company, for the Maloneys' participation in the Smith's buy-out program. *Id*. Ex. A-9.

The security deed filed when the Jacksons sold the campground to the Smiths contained at least one scrivener's error, stating the sale was for 4,873 out of "500" undivided interests, a facial impossibility.  *Id*. Ex. C-3.   In 2001, the Jacksons corrected the error by filing a modification agreement that stated the correct ownership interest in the campground was 3,873 out of the 5,000 UDIs, to correct both the total number of UDIs as 5,000, and to account for the 1,000 UDIs the Jacksons had sold during their ownership, from 1989 through 1999.  *Id*. ¶ 52 and Ex. D-2; *see also* Ex. A to this brief, pp. 3-4 (state court order describing this error). Over the next 15 years -- though interrupted by some litigation between the Smiths, the Jacksons, and others -- the Jacksons received the monthly installment payments that the Smiths agreed to pay towards the owner-financed purchase, as memorialized in the promissory note and the modified agreement.  ¶ 59.

In 2014, having already been in litigation over various real estate disputes, the Smiths failed to make a court ordered payment to the Jacksons on their financing.  ¶ 60.[4]  The Rabun County Superior Court found the Smiths in default, and entered an

---

[4] The Dispossessory Order referenced in ¶¶ 60 – 63 is attached to this brief as **Ex. B**.  As contemplated in Fn. 1 *supra*, the Dispossessory Order is central to the plaintiffs' claim, "The Jacksons … received… an order dispossessing the Maloneys… of Resort Ownership Interests." Compl. ¶ 60.  Therefore, the Court may consider this public document from what Plaintiffs describe in ¶ 9(d) as the "Related Action."

order foreclosing on the campground in favor of the Jacksons security interest, and issued a dispossessory order giving possession of the property back to the Jacksons, all in accordance with the financing documents from the 1999 sale.  ¶ 60.

After the 2014 dispossessory order, and after not having had possession of the campground, its office and records, for 15 years, during which time the Smiths had continued to sell UDIs, as well as implement the "dues buyout program," the Jacksons compiled a list of persons they believed still had valid UDIs related to the campground.  ¶ 67.  The Jacksons list recognized the Maloneys' UDI.  Compl. Ex. F-5.  In 2016, the Jacksons sent letters to the people on that list describing the foreclosure and reminding them of their duties to pay dues and assessments as outlined in the 1994 Covenants.  *Id*. at ¶ 66, Ex. E.  Since the Jacksons had not operated the campground in 15 years, the 2016 letter also asked the UDI holders:

> "***If you have any records*** of payment for payments of taxes or participated in a dues buy-out program from the previous owner during the years 1999 til [sic] 2014 ***we will be glad to work with you***.  Also along with any special assessments or dues you have paid, ***since we do not have any records of payments from any member***."  Compl. Ex. E (emphasis added).

As an alternative to paying additional dues and assessments, the Jacksons offered UDI holders the option to execute a Quit Claim Deed back to TRC at TRC's expense, i.e. to give back their timeshare obligation with no future financial

obligations.  *Id.*  Per the UDI sales documents and covenants, the Jacksons had the legal right to insist on continued UDI/timeshare payments, but instead offered UDI holders this optional, free opportunity, to extricate themselves from these timeshares. The Maloneys do not allege that they ever received this letter, and the sample letter attached to their Complaint was not addressed to them.  *Id*., ¶¶ 66-73 and Ex. E.

Defendants Dana Pacciotti and Shea Smith are the Jacksons' daughters.  ¶¶ 13-14.  From 2015 through 2019, the daughters received payments from TRC, their parent's private company.  ¶¶ 78-80.  Defendant River Falls at the Gorge, Inc., is a Georgia corporation owned jointly by the Jacksons' daughters.  ¶ 12.  The Maloneys do not allege they have ever met the Jacksons' daughters, nor that the Jacksons' daughters ever made any representation to them, nor that anyone working for River Falls at the Gorge, Inc. ever made any representation to them.  While Plaintiffs allege that certain funds belonging to the Jacksons companies are "funneled" and "redistributed," (¶ 92), the Maloneys do not allege they have any legal claim to those funds, or that they are owed any money by any of the Defendants.

Robert Gayle and Torri Gayle own Windy Sky Rentals.  ¶ 24.  In 2015 and 2016, the Gayles began working at the campground.  ¶ 84.  The Gayles run the day-to-day business of the campground, including leasing, maintenance, operating,

securing, and marketing the campground.   ¶¶ 87-88.   Unsurprisingly, since the Gayles run the campground operations, they are "signatories on bank accounts" for the campground.   ¶ 89.   The Maloneys do not allege that they have ever met the Gayles, nor that the Gayles or anyone working for Windy Sky Rentals ever made any representation to them.

While the Maloneys vaguely allege they have been "denied their rights to exercise [their] Interests," the Maloneys do not allege that they have ever been turned away from the campground when they showed up to use it, nor do they allege they were one of the people removed from the premises six years ago, after the 2014 Dispossessory Order.   *Id*. ¶ 61-63.   Indeed, the campground is open to the public. *Id*. ¶ 88.   People visiting the campground are charged various short and long-term rental rates for the campsites, on-site camper units, on-site RVs, treehouse, cabins, and other amenities.   *Id*.

## ARGUMENT AND CITATIONS OF AUTHORITY

Plaintiffs' fraud claims (Count II, III, and IV) should be dismissed because they allege the same set of facts and issues already litigated in Rabun County Superior Court.   "The judgment of a state court is entitled to full faith and credit under Article IV, Section 1, United States Constitution and by 28 U.S.C. § 1738." *Jaffe v. Grant*, 793 F.2d 1182, 1187 (11th Cir. 1986).   For res judicata to bar a

subsequent case, four elements must be present: (1) a final judgment on the merits;
(2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or
those in privity with them, are identical in both suits; and (4) the same issue, or one
which might have been put in issue, is involved in both cases.  O.C.G.A. § 9-12-40;
*see also United States v. Beane*, 841 F.3d 1273, 1283 (11th Cir. 2016); *Lily v. Heard*,
295 Ga. 399 (2014).  "Res judicata thus prevents the re-litigation of all claims which
have already been adjudicated, or which could have been adjudicated, between
identical parties or their privies in identical causes of action."  *Odom v. Odom*, 291
Ga. 811, 812 (2012).

I.    **Plaintiffs' Fraud Claims Are Barred By Res Judicata (Count II).**

Res judicata bars Plaintiffs' wrongful attempt to relitigate fraud claims against
the Jacksons and TRC, as well as their Co-Defendants.  As mentioned by Plaintiffs
13 times in their Complaint, there is a prior, "related" lawsuit to the present action.
¶¶ 9(d), 11, 53, 64, 65, 67, 72, 74, 80, 81, 99, 100, 129.  That action was *Thomsen v.
Tallulah River Company, et al*, Superior Court of Rabun County, Georgia, Civil
Action Number 2014-CV-0150.  *Id.* ¶ 9(b).  Though not detailed in the Complaint,
that related action arose from the "purported foreclosure" instigated by the Jacksons
and TRC after the Smiths failed to make payments on their owner-financed purchase
of the campground.  As alleged, the Jacksons and TRC obtained a dispossessory

order for the campground from Judge Caudell in the Superior Court of Rabun County, Georgia.  Compl. ¶ 64.[5]

In that action, Robert Thomsen, a UDI holder like the Maloneys, and Tallulah Mountain River Resort, Inc., the Smiths' company which bought the campground from the Jacksons, all parties adverse to TRC and the Jacksons, claimed to have "rightful interests in the Campground," alleged that the Jacksons caused "the interests of all UDI holders [to be] illusory and a nullity," and counterclaimed fraud against TRC and the Jacksons.[6]  After reviewing an extensive record and voluminous summary judgment filings, Judge Caudell granted summary judgment on the fraud claim, finding there was ***"no evidence indicating [TRC] and/or [the Jacksons] made any false representations to [Mr. Thomsen, the UDI holder***, Tallulah Mountain River Resort, Inc., and other Tenants in possession at the time of the dispossession]."[7]  (emphasis added).  That Order binds Plaintiffs, for the claims they are bringing as UDI holders, including barring them from recovering for fraud in this action.

---

[5] *See* **Ex. B**.

[6] *See* 2016-05-31 Amended CC and Third-Party CC at 15, attached hereto as **Ex. C**.  As

[7] *See* **Ex**. **A** at 9-10.

## A.  Elements One, Two, And Four Of Res Judicata Are Readily Apparent

The prior order was an order on summary judgment and therefore a judgment on the merits.  It was rendered by a Georgia Superior Court Judge interpreting Georgia law and therefore a court of competent jurisdiction.  "A cause of action has been deemed to be the entire set of facts which give rise to an enforceable claim." *Crowe v. Elder,* 290 Ga. 686, 688 (2012).  Both the Maloneys and the prior counter-claimants, Thomsen and TRMR, relied on the same set of facts to make their fraud claims.  Their claims were virtually identical to Plaintiffs' here.  The prior counter-claimants alleged:

- "TRC and the Jacksons have engaged in actual fraud, involving moral guilt and artifice, to deceive Mr. Thomsen… and rob [him] of [his] rightful interests in the Campground."[8]  *Compare* ¶139.

- "TRC and the Jacksons intended from the inception of their relationship with Mr. Thomsen, TRMR… and **other UDI holders** that they would never relinquish a single UDI or other *bona fide* interest in the Campground."[9]  *Compare* ¶ 140.

- "TRC and the Jacksons knew that clear title could never be obtained, thus preventing **all UDI holders** from transferring, selling or conveying their interests in the Campground, and thereby rendering the interests of **all UDI holders** illusory and a nullity" and that "TRC and the Jacksons made representations concerning the validity of UDI interests

---

[8] **Ex. C** at 15.

[9] *Id*.

to Mr. Thomsen knowing that such representations were false.[10] *Compare* ¶¶ 141 and 144.

- "…Mr. Thomsen relied on these representations as set forth herein. Among other reasons, such reliance was justified by virtue of their longstanding business relationships with one another and the repeated nature of the UDI transactions.[11]  *Compare* ¶ 145.

- "The statements and omissions of material fact made by TRC and the Jacksons demonstrate a wrongful bent of mind.  TRC and the Jacksons willfully and intentionally deceived [] TRMR and Mr. Thomsen with the intention that they would continue to make payments set forth herein."[12]  *Compare* ¶ 147.

As these nearly identical pleadings show, both Mr. Thomsen's state court claims and the Maloneys' claims here attack TRC and the Jacksons' motives in selling UDIs, collection of payments under their promissory note, foreclosure in 2014, and subsequent dispossession of TRMR, Mr. Thomsen, and all other UDI holders claiming under TRMR's ownership.  *See Lily*, 295 Ga. at 404 (finding identity of a cause of action when prior and subsequent plaintiffs' claims under two separate code sections seeking same relief relied on the same facts).  Therefore, the same issue or issues that may have been presented in state court are present in this

---

[10] *Id.*

[11] *Id.*

[12] *Id.* at 16.

14

suit.  The only remaining question for determining if res judicata applies is whether Plaintiffs were in privity with Mr. Thomsen or TRMR.

### B.   Mr. and Ms. Maloney Were And Remain In Privity With Both And Mr. Thomsen And TRMR.

Although generally one is not bound by a judgment in a litigation in which he is not named as a party, that rule "is subject to exceptions."  *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008).  Those exceptions fit into six categories, three of which are most relevant here: (1) where certain substantive legal relationships exists between the nonparty and a party to the judgment, (2) where a nonparty assumed control over the litigation in which that judgment was rendered, and (3) where the nonparty brings a later suit as the designated representative of a party to the prior judgment.  *Id*. at 893-895; adopted in Georgia by *Southern LNG Inc. v. Macginnitie*, 294 Ga. 657 at 663, 755 S.E.2d 683 at 689, Fn. 12 (2014).  All three exceptions are present here and warrant dismissing Plaintiffs' fraud claims.

*First*, the Maloneys had, and continue to have, substantive legal relationships with Mr. Thomsen and Tallulah River Mountain Resort, Inc. In fact, those legal relationships are at the heart of Plaintiffs' present action.  Tallulah Mountain River Resort, Inc., operated as the "club" on whose behalf the Plaintiffs now file suit.  *See* Compl. Ex. A-9.  Mr. Thomsen and Plaintiffs claim UDI or Resort Ownership

Interests making them tenants in common of the campground.  Compl. ¶ 102.  As outlined above, Mr. Thomsen and TRMR made virtually identical fraud claims as Plaintiffs.  The similarity between Plaintiffs, Mr. Thomsen, and TRMR's claim of injury and interests in the campground reflect the privity and identity of interests between the parties.  "Because there is a close connection between the concept of privity and the notion of identity of interest, the existence of the same rights and interests in property has been recognized as being specific enough to create privity for purposes of claim preclusion." *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1249 (11th Cir. 2014) (precluding children not parties to siblings prior action from presenting subsequent wrongful death claims).

*Second*, Plaintiffs had some control over the litigation in which the prior judgment was reached.  As already mentioned, TRMR was acting as the de facto club of UDI holders for which Plaintiffs now seek compensation.  As club members, Plaintiffs had the ability to assert their rights within the club and influence the litigation.  Mr. Thomsen, as a UDI holder, sought damages in the fraud claim and was the primary participant in the prior action.  The Maloneys involvement was similar.  ***In the related action, Ms. Maloney testified at trial and both Maloneys***

*were present for the entirety of the trial.*[13]   Ms. Maloney literally already had her day in court even though she was not a formal party to the litigation.  *See Taylor*, 553 U.S. at 895 and *Montana v. U.S.*, 440 U.S. 147, 154 (1979) (One "who assists in the prosecution or defense of an action in aid of some interest of his own… is as much bound… as he would be if he had been a party to the record." (citations omitted)).

*Third*, Plaintiffs are now bringing this action as the designated representative of a party to the prior adjudication: Mr. Thomsen, a UDI holder.[14]  ¶ 117.  Indeed, Plaintiffs seek to represent a class of all of the UDI holders.  As evidenced above, Plaintiffs' claims are nearly identical to Mr. Thomsen's rejected claims and based largely on the same evidence and same motive.  The Jacksons and TRC have already been forced to prove their rightful intentions once, and *the state court found no evidence they had committed fraud*.  Nothing prevented Plaintiffs from asserting their fraud claims in the prior action.  Indeed, Plaintiffs are represented in this action by the same counsel who represented Mr. Thomsen in the state court action.  And consider the reverse:  if the Jacksons and TRC had been found to have committed

---

[13] *See* Sworn Testimony of Stephanie Maloney, attached as **Ex. D**.  For the same reason as **Ex. B**, the Court can consider it in this Motion to Dismiss.

[14] **Ex. C** at 15.

fraud by the state court, Plaintiffs surely would be relying on that in this subsequent action.

For all of these reasons, the long-established principles of res judicata, as well as basic fairness, bar Plaintiffs' fraud claims.

## II.   Plaintiffs Fail To State A Claim That River Falls At The Gorge, Inc., the Gayles, Windy Sky Rentals LLC, Dana Pacciotti, Or Shea Smith Aided and Abetted Fraud. (Count III)

Although pled by Plaintiffs, "the tort of 'aiding and abetting fraud' does not exist as a basis for liability under Georgia law." *Siavage v. Gandy*, 350 Ga. App. 562, 266 (2019).  Instead, only one who "knowingly participat[es] in a fraud" may be held liable for the fraud." *Id*.  To knowingly participate in a fraud, a fraud must have occurred.  For the reasons discussed in Section II in the Jacksons' motion to dismiss brief, no fraud occurred here, or at least it certainly has not been sufficiently alleged.  Thus, Count III for "aiding and abetting fraud" against River Falls at the Gorge, Inc., the Gayles, Windy Sky Rentals LLC, Dana Pacciotti, and Shea Smith should be dismissed for this additional reason.  The Gayles join in this section as well, and incorporate this section by reference into their own motion.

Even if Plaintiffs had sufficiently alleged the Jacksons and TRC committed a fraud, they have failed to allege River Falls at the Gorge, Inc., the Gayles, Windy Sky Rentals LLC, Dana Pacciotti, or Shea Smith either knew of the fraud or

participated in the fraud.  No action in the complaint is attributed to the Daughters except vague allegations they have "received money" from their parents.  ¶¶ 20, 94, and 153-157.  No specific act done to the Maloneys is attributed to any of these parties, and nowhere is it alleged these parties had knowledge of any fraud.  ¶¶ 152 - 159

## III.    Conclusion

Plaintiffs do not deserve "two bites at the apple."  Therefore, Plaintiffs' claims for fraud, aiding and abetting fraud, and RICO (Counts II, III, and IV) should be dismissed as barred under the principles of res judicata or alternatively dismissed for failure to state a claim upon which relief could be granted.  The Jacksons and their family should not have to defend themselves twice against the same allegations from the same set of plaintiffs.

Respectfully submitted, this 25th day of September 2020.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Ranse M. Partin*
RANSE M. PARTIN
Georgia Bar No. 556260
JAMES T. COX
Georgia Bar No. 296191
4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327-3007
Phone: 404-467-1155

Fax: 404-467-1166
ranse@conleygriggs.com
james@conleygriggs.com

***Counsel for Defendants Tallulah River Co., Inc., Randolph Jackson, Patricia Jackson, River Falls at the Gorge, Inc., Dana Pacciotti, and Shea Smith***

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

This is to certify that I have this date served a copy of the foregoing **Brief in Support of Motion to Dismiss by Defendants River Falls at the Gorge, Inc., Dana Pacciotti, and Shea Smith** by using the Court's CM/ECF filing system which automatically serves all counsel of record.  The undersigned further certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1(B) of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

This 25th day of September, 2020.

*/s/ Ranse M. Partin*
Ranse M. Partin