**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| STEPHANIE J. MALONEY, ) EVERETTE D. MALONEY, and ALL ) OTHERS SIMILARLY SITUATED ) ) Plaintiffs, ) ) v. ) ) TALLULAH RIVER CO., INC.; ) RANDOLPH JACKSON; PATRICIA ) JACKSON; RIVER FALLS AT THE ) GORGE, INC.; DANA PACCIOTTI; ) SHEA SMITH; ROBERT GAYLE; ) TORRI GAYLE; and WINDY SKY ) RENTALS LLC, ) ) Defendants. ) | CIVIL ACTION FILE NO. 2:20-cv-00191-SCJ |

**BRIEF IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANTS TALLULAH RIVER CO., INC.,**
**RANDOLPH JACKSON, PATRICIA JACKSON, ROBERT GAYLE,**
**TORRI GAYLE, AND WINDY SKY RENTALS**

Ranse M. Partin
James T. Cox
CONLEY GRIGGS PARTIN LLP
4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327-3007

James W. Hurt, Jr.
HURT STOLZ, P.C.
1551 Jennings Mill Road
Unit 3100B
Watkinsville, Georgia 30677

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

STATEMENT OF FACTS .................................................................................... 3

STANDARD OF REVIEW ................................................................................... 3

ARGUMENT AND CITATIONS OF AUTHORITY ...................................................... 4

I.   Plaintiffs Fail To Plausibly Allege Any Material Breach Or Damages
     To Support Their Breach Of Contract Claim (Count I) .............................. 4

     A.   Plaintiffs fail to allege what particular contract provision was
          breached .......................................................................................... 5

     B.   Plaintiffs' allegations show no breach occurred, based on the
          terms of the 1994 Covenants. .............................................................. 7

     C.   Plaintiffs fail to allege they have been personally damaged due
          to any breach. .................................................................................. 8

     D.   Plaintiffs' allegations contradict that their contractual interests
          have been compromised. ..................................................................... 9

II.  The Fraud Claim Is Barred Both By The Statute Of Limitations, As
     Well As Its Failure To Particularly Allege Any Fraudulent
     Statement (Count II) ...................................................................... 11

     A.   The Statute of Limitations Bars the Fraud Claim. ......................... 11

     B.   Plaintiffs Fail To Satisfy Rule 9(b)'s Heightened Pleading
          Standard For Fraud .......................................................................... 13

III.   Plaintiffs Have Not Properly Pled A RICO Criminal Scheme. (Count IV) ..................................................................... 17

    A.   Plaintiffs Fail to Plausibly Allege A RICO Enterprise Existed Or That Any Single Defendant Operated Or Managed Such Enterprise ................................................. 18

    B.   Plaintiffs Fail To Plead A Pattern Of Racketeering Acts ................. 21

    C.   Plaintiffs' RICO Conspiracy Claim Should Also be Dismissed ......................................................................... 23

CONCLUSION ...................................................................... 25

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

This is a real estate dispute over a single timeshare that the two plaintiffs mischaracterize as a criminal enterprise. The Maloneys, in 1989, paid $500 down for a 1/5000 timeshare interest in a 68-acre campground in northeast Georgia. While the Maloneys seek to represent a class of plaintiffs, this motion challenges the substance of their individual claims. If granted, as it should be, the class allegations would be mooted.

First, res judicata bars all of the fraud claims (Counts II – IV). A Georgia Superior Court has already issued an order granting summary judgment on an identical fraud claim, making findings as to the same facts and similarly situated parties in this Complaint, and involving the same counsel. The Superior Court judge found nothing nefarious -- and no fraud by the Jacksons -- in the ordinary real estate transactions behind both of these cases.[1] *See* Ex. A to Co-Defendants'

---

[1] Defendants attach exhibits to their motions to dismiss, and reference exhibits to the Complaint. While generally, the Court "may not consider matters outside the pleadings without converting the motion to a motion for summary judgment," *Redding v. Tuggle*, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *5 (N.D. Ga. July 31, 2006), adopted at *1, the Court "need not make this conversion when considering a document attached to the complaint or to a motion to dismiss if 'the attached document is (1) central to the plaintiff[s'] claim and (2) undisputed,' " *Barber v. Rubin Lublin, LLC*, Civil Action File No. 1:13-CV-975-TWT, 2013 WL 6795158, at *3 (N.D. Ga. Dec. 20, 2013) (citation omitted); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam) (noting a court may consider an exhibit on a motion to dismiss if the

Brief [Doc. No. 21-1, 21-2], Order on Motions for Summary Judgment, *Tallulah River Co., Inc. v. North Georgia Mountain Investment Group, LLC, et al*, Superior Court of Rabun County, Case No. 2014-CV-0150C (July 19, 2017).  The res judicata argument is addressed in the motion to dismiss brief filed this same date by Co-Defendants [Doc. No. 21-1] and is incorporated herein by reference.

Individually, each count fails for additional reasons.  *Count I*, breach of contract, fails because the allegations fail to show what was breached.  *Count II*, fraud, based on 1989 documents, fails for failing to allege any specific misrepresentation, in addition to being barred by the statute of limitations.  *Count III*, aiding and abetting fraud, fails because such a claim does not exist under Georgia law.  In *Count IV*, RICO, Plaintiffs brazenly accuse the Jacksons, their daughters, and business associates of criminal conduct in running the campground.  Judge Grimberg recently dismissed, and sanctioned, similarly thin RICO allegations also based on mail and wire fraud.  *Ghandi v. Ehrlich*, 1:19-CV-03511-

---

exhibit is "central to the plaintiff's claim and the authenticity of the document is not challenged").  The documents here are central to Plaintiffs' claims and, Plaintiffs have no known basis to challenge authenticity.  Moreover, the documents are public record, and "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Halmos v. Bomardier Aerospace Corp.*, 404 Fed.Appx. 376, 377 (11th Cir. 2010) (unpublished) (citations omitted).

SDG, 2020 WL 5633416, at *4 (N.D. Ga. Sept. 21, 2020).  The RICO claims here should similarly be dismissed for having no plausible factual basis, and because Plaintiffs fail to allege any actions by any Defendant that were a crime.

## STATEMENT OF FACTS

For brevity, this brief incorporates herein by reference the Statement of Facts in the Brief in Support of Motion to Dismiss by the Co-Defendants [Doc. No. 21-1 at 3], filed this same date.  As in that document, all citations herein to ¶ alone are to the Complaint [Doc. No. 1].

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Twombly*, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Brooks v. Branch Banking & Tr. Co*., 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (J. Jones), *citing Twombly*, 550 U.S. at 555.  The complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*.  (internal citations and emphasis omitted).

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    Plaintiffs Fail To Plausibly Allege Any Material Breach Or Damages To Support Their Breach Of Contract Claim (Count I).**

Count I alleges breach of contract against the Jacksons and TRC. ¶¶ 131-137.[2] The Complaint alleges that the contract collectively consists of the (a) 1994 Covenants, (b) the Maloneys' Purchase Contract, (c) the Co-Tenancy Agreement, and (d) the Maloney's Warranty Deed, all describing the Plaintiffs' "Resort Ownership Interests." ¶ 131, 134-135.  The Maloneys allege the Jacksons and TRC violated this collective contract by: (1) evicting, dispossessing, and stripping the Maloneys of their interests, and (2) failing to operate, and permit the Maloneys to use, the campground as a membership campground.  ¶¶ 132-134.

A claim for breach of contract under Georgia law requires factual allegations supporting that (1) a valid contract exists, (2) a material breach occurred, and (3) the plaintiffs were damaged by that breach.[3]  *Brooks*, 107 F.Supp.3d at 1295.  As this

---

[2] Although Plaintiffs label this count "Breach of Resort Ownership Interests Against TRC and the Jacksons," their claim boils down to a breach of contract. Georgia courts look beyond labels placed on causes of action to determine whether a plaintiff has stated a claim which is allowable under Georgia law.  *Siavage v. Gandy*, 350 Ga. App. 562, 566 (2019).

[3] Defendants suggest the Court apply the substantive law of Georgia to the pendant state law claims in Counts I, II, and III.  While Plaintiffs do not expressly

Court has held in granting a motion to dismiss, "a plaintiff asserting a breach of contract claim *must allege a particular contractual provision* that the defendants violated to survive a motion to dismiss." *Id.* at 1296 (citations omitted; emphasis added).

### A. Plaintiffs fail to allege what particular contract provision was breached.

Plaintiffs fail to state a breach of contract claim because they fail to allege what particular provision was breached. The Maloneys do allege vaguely that at some unspecified time after the 2014 Dispossessory Order, "the Maloneys . . . have repeatedly requested access to the Resort and have asked that they be allowed to exercise their Resort Ownership Interests, but they have been repeatedly, repetitively, and separately denied their rights to exercise such Interests by the Jacksons and the Gayle Parties (at the Jacksons' behest)." ¶ 63. These and the other allegations fail to state a specific contractual provision the Jacksons or TRC breached. As this Court has held, "a plaintiff asserting a breach of contract claim

---

allege what substantive law applies, they allege venue and personal jurisdiction in Georgia. ¶¶ 3-4. At least one of the documents they signed, the Promissory Note, states it is governed by Georgia law. Compl. Ex. A-2. Although none of the documents allegedly breached contain a choice of law clause, the interests at issue concern real property located in Georgia.

must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Brooks*, 107 F. Supp. 3d at 1296.

Plaintiffs here do the opposite of alleging a particular contract provision, alleging a breach of "*all*" the obligations under the "1994 Covenants by failing and refusing to operate the [campground] as a membership campground."   ¶ 133 (emphasis added).   The 1994 Covenants run 37 pages.   Compl, Ex. J-1 – J-37. Searching elsewhere in the Complaint for more specificity, Count I's paragraph 130 does incorporate the first 115 paragraphs of the Complaint, and paragraphs 101 – 113, according to their heading, purport to allege the specific provisions of the 1994 Covenants.  But in paragraph 101, Plaintiffs again simply allege TRC "has violated or otherwise failed to fulfill its role as Declarant [under the covenants] in *all* respects . . ." ¶ 101 (emphasis added).  The remaining paragraphs 102 – 113 simply quote various parts of the covenants, without alleging which were breached, or how, or when.

In even less specific allegations, Plaintiffs allege, without pointing to any particular contractual provision, or when it was breached, that the Jacksons and TRC breached, presumably all, of three other documents:  the Purchase Contract, the Co-Tenancy Agreement, and the Warranty Deed.  As with the allegation that "all" the covenants were breached, Plaintiffs' failure to allege what particular contractual

provision the Defendants violated in these three documents does not survive a motion to dismiss. *Brooks*, 107 F.Supp. 3dd at 1296.

**B.    Plaintiffs' allegations show no breach occurred, based on the terms of the 1994 Covenants.**

Just as fatal to their contract claim as their lack of specificity, the terms of the 1994 Covenants themselves establish that the Maloneys have no claim for breach. Under the covenants, "[TRC] further reserves the right, until it has sold ninety-nine percent (99%) of the memberships . . . to operate and maintain its business, promotion, and sales functions in and upon the Property or improvements thereon and said functions shall not be subject to control, use, or inspection by the Club or its members." Compl, Ex. J-16 (Article IV, ¶ C). The covenants also state that any rule of the club limiting the number of guests "shall not apply to [TRC] until it has sold at least ninety-nine (99%) percent of the memberships and Undivided Interests subject to these Restrictions so long as [TRC] is actively attempting to sell such memberships." *Id*. at J-13. Additionally, TRC reserved the right to use certain "areas in campsites, which shall not be subject to these restrictions, the Articles of Incorporation, Bylaws, or Club Guidelines and Rules until it has sold Ninety-Nine Percent (99%) of the Memberships in the Club or so long as it is actively attempting to see Memberships or until it no longer holds a Purchase Money Security Deed on any Membership." *Id.* J-16. Plaintiffs' allegations establish that neither TRC nor

any other owner ever sold 99% of the 5,000 memberships.  ¶¶ 32, 33, 36, 51.  Thus,

because TRC always owned a super-majority of the UDIs during the times it owned

the campground, and certainly never sold 99% of the UDIs, under the terms of the

covenants controlling the Maloneys' interests, TRC and the Jacksons have every

right to conduct their own business upon the campground property, including

running a daily – fee campground open to the public.

### C.   Plaintiffs fail to allege they have been personally damaged due to any breach.

The Maloneys also fail to allege they have been personally damaged by any

alleged breach.  The Complaint fails to plead:  (1) that the Maloneys were on or

attempting to use the property in 2014 when the Jacksons and TRC effectuated the

Superior Court's Dispossessory Order, (2) that the Maloneys were on the property,

or appeared at the property, at any other time and the Jacksons or TRC removed

them or barred them from the property, or (3) that the Maloneys attempted to use the

Resort as a membership campground but the Jacksons or TRC prevented them from

doing so.[4]  In fact, Plaintiffs admit the campground is currently open to the general

---

[4] As noted above, the Maloneys do allege somewhat vaguely they "have repeatedly requested access to the Resort and have asked that they be allowed to exercise their Resort Ownership Interests, but they have been repeatedly, repetitively, and separately denied their rights to exercise such Interests by the Jacksons and the Gayle Parties (at the Jacksons' behest)."  ¶ 63.

public.  ¶ 88.  Moreover, the Maloneys do not allege they have paid, or been asked to pay, any of their share of the property taxes, insurance, and other costs of running a campground, since the Jacksons had to take back ownership in 2014.

### D.   Plaintiffs' allegations contradict that their contractual interests have been compromised.

Though Plaintiffs claim that they have been evicted, dispossessed, and stripped of their interests, the Complaint shows that the Jacksons and TRC have recognized Plaintiffs' interest in the campground.  As alleged, despite not having access to the campground operations and records during the 15 years the Smiths owned it, after the Jacksons had to foreclose and resume ownership and operation of the campground, the Jacksons and TRC compiled a list of all persons believed to have Resort Ownership Interests.  ¶ 67.  That list included the Maloneys.  Compl. Ex. F-5.  The Jacksons compiled that list after the 2014 dispossessory action, which action only extinguished the ownership rights of the Smiths, and the people to whom the Smiths sold UDIs through their separate company, Tallulah River Mountain Resort, Inc. ¶ 45.  As noted in the Superior Court's order about the 2014 foreclosure, TRC "foreclosed upon 3,873 UDIs and the [campground.]"  Ex. A to Co-Def.'s brief [Doc. No. 21-2 at 7].  This shows that the Jacksons did not foreclose on the 1,000 UDIs that the Jacksons sold under their ownership in 1989 – 1999, when the Maloneys bought their UDI.  Compl ¶¶ 39 and 52; Ex. D-2 and A-3.

Further, in 2016 after the Jacksons had to foreclose on the Smiths, the Jacksons sent out letters to UDI holders explicitly informing people of their rights and obligations to the campground.  Compl. ¶ 66, Ex. E.  As noted, the Jacksons included the Maloneys on their list of UDI owners (although, important for the fraud claim, discussed below, the Maloneys do not allege they received the letter).  The letter asked the UDI holders:

> "*If you have any records* of payment for payments of taxes or participated in a dues buy-out program from the previous owner during the years 1999 til [sic] 2014 *we will be glad to work with you*.  Also along with any special assessments or dues you have paid, *since we do not have any records of payments from any member*."  Compl. Ex. E (emphasis added).

The Maloneys do not allege that they provided any records to the Jacksons in response to this request to clarify their interests.

Those two actions taken together – not foreclosing on the UDI holders who, like the Maloneys, purchased prior to the Smiths' ownership, and attempting to communicate with the Maloneys about their UDI interest -- demonstrate that TRC and the Jacksons have recognized the Maloneys' deed rights. The Jacksons' efforts to clean up the ownership record and dues program created under the Smiths' 15 years of ownership is simply no support for the Maloneys' breach claim.

## II.    The Fraud Claim Is Barred Both By The Statute Of Limitations, As Well As Its Failure To Particularly Allege Any Fraudulent Statement (Count II)

Count II asserts fraud.   ¶¶ 138-150.  Fraud requires allegations the defendant: (1) made a false representation, (2) knew of its falsehood, (3) intended to induce the plaintiff to act or refrain from acting, (4) that the plaintiff justifiably relied on that representation, and (5) the plaintiff was damaged.  *Bacote v. Wyckoff*, 251 Ga. 862, 865 (1984).

### A.    The Statute of Limitations Bars the Fraud Claim.

The Maloneys' fraud claim, based on documents signed in 1989, is long barred by the statute of limitations.  Georgia's statute of limitations allows four years to bring a claim for fraud.  O.C.G.A. § 9–3–31.

As suggested by their pleading in Count II, Plaintiffs will likely argue they are victims of "actual fraud," which sometimes "tolls the statute of limitations where it is the gravamen of the action before the court."  *GE Life & Annuity Assur. Co. v. Barbour*, 189 F. Supp. 2d 1360, 1366 (M.D. Ga. 2002), *citing, Shipman v. Horizon Corp.*, 245 Ga. 808, 267 S.E.2d 244, 246 (1980). "Where the basis of an action is actual fraud, the mere silence of the party committing it is treated as a continuation of the original fraud and as constituting a fraudulent concealment, and the statute of limitations does not begin to run against such right of action until such fraud is

discovered, or could have been discovered by the exercise of ordinary care and diligence." *Id.*, 267 S.E.2d at 246.  However, "to toll the statute of limitation, concealment of a cause of action must be by positive affirmative act and not by mere silence… There must be some trick or artifice employed to mislead the party who has the cause of action." *Moore v. Meeks*, 225 Ga. App. 287 (1997).  "[A] plaintiff must be debarred or deterred from suing by reason of fraud involving moral turpitude, independent of the facts which give rise to the cause of action itself." *Edwards v. Monroe*, 54 Ga. App. 791, 189 S.E. 419, 424 (1936).

First, where the essence of an action is actual fraud, failure to exercise reasonable diligence to discover the fraud may be excused if a relationship of trust and confidence exists between the parties. *Id., citing Shipman*, 267 S.E.2d at 246. But here, the Maloneys do not allege that a relationship of trust and confidence existed between them and any of the Defendants, nor could they, as this was an arms-length real estate transaction.

Second, the allegation that the Jacksons, in 1989, had mapped out a plan 25 years in advance, to sell the campground then have the Superior Court foreclose in 2014 so they could take back the campground, is ludicrous. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt.*, 297 F.3d 1182, 1188 (11th

Cir. 2002).  If not for conclusory allegations and unwarranted deductions, Count II would have no content, i.e. "the Jacksons intended from the inception of their relationship with the Maloneys . . . that they would never relinquish a single UDI . . ." ¶ 140.

Even assuming that somehow the statute of limitations was tolled until 2014, the Maloneys were certainly on notice of this alleged fraudulent scheme once the 2014 dispossessory action occurred and the campground was vacated for the Jacksons' resumed ownership, thus re-starting the four year statute of limitations. Because any alleged misrepresentations the Maloneys actually received appear in documents they signed in 1989, their fraud claim is time barred under Georgia law.

## B.    Plaintiffs Fail To Satisfy Rule 9(b)'s Heightened Pleading Standard For Fraud

In addition to being time barred, Plaintiffs' fraud claims are facially deficient because they are conclusory and vague.  "[A] party [alleging fraud] *must state with particularity the circumstances constituting fraud or mistake*." Fed. R. Civ. P. 9(b). (emphasis added).  Because fraud is easy to allege, Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116

-13-

F.3d 1364 (11th Cir. 1997).  Rule 9(b) requires the complaint set forth: (1) precisely *what statements* were made in what documents or oral representations or what omissions were made, (2) the *time and place* of each such statement and the person responsible for making it, (3) the *contents* of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud." *Id.* (Citation Omitted).

*First*, the Maloneys do not state what specific misrepresentation TRC and the Jacksons made to them.  Plaintiffs generally allege there were "false indications on the Security Deed … and Modification Agreement" without saying what was false. ¶ 144.  They allege they "relied on the representations contained and embodied within their Resort Ownership Interests," which they previously defined as consisting of several documents, (¶ 131), but do not say what statements in those several 1989 documents were false (¶ 147).  More remarkably, Plaintiffs allege the 2016 letter the Jacksons sent to UDI holders was a "false and predatory letter" (¶ 148), but they do not allege what about it was false, or that they even received it. The letter itself is demonstrably not fraudulent because it summarizes the 1994 Covenants that establish that UDI holders are responsible and may be asked to pay for special assessments, taxes, and dues.  Compl. ¶ 102, Ex. J at 18.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law of this Circuit that

when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." (quotation omitted)).

Plaintiffs fail to allege with particularity any specific misrepresentation that induced them to act or refrain from acting. Instead, they claim "***all*** representations and warranties in the Covenants, as well as the Agreement for Co-Tenancy were false, illusory, and would never be honored by TRC and the Jacksons." ¶ 144 (emphasis added). They make no effort to delineate who specifically made any representations, when they were made, or how they were made. Such broad and vague pleading amounts to "shotgun" pleading that has long been disfavored and prevents Defendants from being able to respond. *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020) ("As of 2008, we had explicitly condemned shotgun pleadings upward of fifty times…Shotgun pleadings are unacceptable for many reasons, but this case illustrates an important one: they result in unintelligible pleadings that violate the basic specificity requirements of Fed. R. Civ. Pro. 8(a)(2)…") (Citation Omitted)).

*Second*, Plaintiffs' fraud claim relies on bare, unsupported conclusions about the Jacksons' future intent in 1989 when the Maloneys bought their UDI. "TRC and the Jacksons intended from the inception of their relationship with the Maloneys . . . that they would never relinquish a single UDI or other *bona fide* interest in the

Resort." ¶141.  But Plaintiffs fail to plead any conversations, documents, or statements that support that bald conclusion.  Moreover, the facts alleged and as shown in the attached documents lead to the opposite conclusion.  The 2001 modification agreement corrected the scrivener's error incorrectly stating the UDIs held by the Jacksons at their 1999 sale to the Smiths.  The modification agreement corrected the error by stating the correct ownership interest in the campground was 3,873 out of the 5,000 UDIs, to correct both the total number of UDIs as 5,000, and to account for the 1,000 UDIs the Jacksons had sold during their ownership, from 1989 through 1999.  *Id*. ¶ 52 and Ex. D-2; *see also* Ex. A to Co-Def.'s brief, [Doc No. 21-2 at 3-4] (state court order describing this innocuous error).  It belies logic that the Jacksons would execute a modification agreement to release an additional 1,000 UDI interests if they wanted to scheme to retain possession of them. Moreover, the Maloneys' security deed shows that the Jacksons had it duly recorded in the county deed records, thereby creating a valid, *bona fide* interest in the campground.  Compl. ¶ 43, Ex. A-1.  And as discussed above, the Jacksons have consistently recognized the Maloneys' ownership interests in including them in the list of persons the Jacksons believed owned UDIs, which conflicts with Plaintiffs' bare conclusion that they never intended to recognize these interests.

### III. Plaintiffs Have Not Properly Pled A RICO Criminal Scheme. (Count IV)

Count IV is perhaps the most egregious of the allegations.  The Maloneys allege that the Jacksons, their daughters, and business associates engaged in a criminal racketeering enterprise under a statute designed to combat organized crime. *See generally Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 486 (1985) (discussing legislative history of RICO: "Title IX of the Organized Crime Control Act of 1970").  A private plaintiff suing for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and specifically 18 U.S.C. § 1962(c) must plausibly allege six elements:  that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff.  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016).

Similar to pleading fraud, a plaintiff must satisfy the heightened standard of pleading required by Rule 9(b).  "Because of the specificity of the RICO statute and the stigma associated with charges of racketeering, courts have held RICO claims to enhanced specificity of pleading requirements." *Club Car Inc. v. Club Car (Quebec) Import, Inc.*, 276 F.Supp.2d 1276, 1283 (S.D. Ga. 2003).

**A.     Plaintiffs Fail to Plausibly Allege A RICO Enterprise Existed Or That Any Single Defendant Operated Or Managed Such Enterprise**

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Plaintiffs allege the criminal enterprise here consists of all Defendants, thereby alleging an "association-in-fact" enterprise.  ¶ 161.  *Ray*, 836 F.3d at 1352 ("[T]he enterprise alleged in this case is an association-in-fact enterprise, it does not itself comprise a legal entity.").  "To plead an association-in-fact enterprise, [] a plaintiff must allege that a group of persons shares three structural features: "(1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Cisneros v. Petland, Inc.*, No. 18-12064, 2020 WL 5015283 (11th Cir. August 25, 2020) (affirming dismissal of RICO claims based on an "association-in-fact" enterprise) (citations omitted).  Here, Plaintiffs have failed to plausibly allege Defendants participated in a RICO criminal enterprise because they have not alleged facts showing a common purpose or that any particular defendant managed the enterprise.

Plaintiffs' purpose allegations fall far short of the specificity the Eleventh Circuit requires.  The purpose prong contemplates "a common purpose of engaging

-18-

in a course of conduct' among the enterprise's alleged participants. *An abstract common purpose, such as a generally shared interest in making money, will not suffice.*" *Id.* at *4 (internal citation omitted; emphasis added). As in *Cisneros*, the only common purpose among the Defendants that Plaintiffs allege is an abstract common purpose in making money. The purpose of the alleged RICO enterprise was "to take for themselves the entirety of the Resort and all revenue derived therefrom . . . " ¶ 161. This abstract idea to take the revenue, however, does not suffice to allege a RICO purpose because "a RICO plaintiff must plausibly allege that the participants shared the purpose [of taking the resort] *through a particular criminal conduct*." *Cisneros*, 2020 WL 5015283 at 4 (emphasis added). Nowhere do Plaintiffs allege the Defendants agreed, discussed, or planned upon a particular course of criminal conduct to defraud Plaintiffs. The Complaint contains no allegations about specific interactions between the Defendants, nor allegations regarding the origins or scope of the alleged scheme. Plaintiffs have not even conclusively alleged any organized crime occurred even though they are required to specifically state the criminal conduct in which the Defendants agreed to partake.

The only allegedly fraudulent (but not criminal) actions the Maloneys allege as a proximate cause for their alleged damages are the 2014 dispossessory court action and the 2016 letter sent to UDI holders, which the Maloneys do not even

allege they received.  Overlooking whether availing the Superior Court's foreclosure process could constitute a fraudulent act, Plaintiffs never allege Defendants agreed they would partake in that course of conduct to deprive the Plaintiffs of their Resort Ownership Interests. There is no allegation the Gayles or the Jacksons' daughters, or their businesses, conspired in the 2014 foreclosure. ¶¶ 60-63. The same goes for the 2016 letter and wire fraud.  Besides failing to state with specificity who was responsible for writing the letter and the letter being demonstrably not fraudulent[5], Plaintiffs also fail to allege that Defendants agreed to defraud the Plaintiffs through writing it.

The Complaint also fails to allege that any RICO enterprise exists because it fails to concretely describe any of the Defendants' roles in the enterprise, other than the Jacksons.  The Jacksons cannot form a RICO enterprise with themselves. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  The highest level of specificity Plaintiffs allege to any individual Defendant's actions is that TRC and the Jacksons sent the 2016 letters and that TRC and the "Jackson parties" transmitted wire funds.  ¶¶ 164 and 167.  Even here, Plaintiffs fail to distinguish between TRC and the Jacksons, two separate people.  ¶ 8.  Nowhere do Plaintiffs

---

[5] *See Supra* Section I. (B), Section I. (D), and Section IV (B).

allege what active role any particular individual had in the enterprise. This deficiency is most glaring considering the heightened RICO pleading requirements in the Eleventh Circuit: that each defendant must participate in the operation or management of the enterprise itself and thus not be an "outsider" in order to be considered an enterprise participant. *Club Car Inc.*, 276 F.Supp.2d at 1284. Without that specificity, no enterprise has been pled, and the Complaint fails to allege a RICO enterprise existed.

### B. Plaintiffs Fail To Plead A Pattern Of Racketeering Acts.

Racketeering activity, commonly known as a "predicate act," includes any of a long list of state and federal crimes. 18 U.S.C. § 1961(1). When describing predicate acts in accordance with Rule 9(b), RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud. *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). Importantly, ***RICO requires Plaintiffs to allege indictable criminal conduct***, *Brooks v. Blue Cross & Blue Shields of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997), not merely unfair or deceptive schemes. In addition, Plaintiffs must plausibly allege that Defendants are engaged in "criminal conduct of a *continuing* nature."

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original).

Here, the Complaint alleges two predicate acts: (1) sending the 2016 letter to UDI owners, and (2) transmitting unspecified wire funds across state lines. Neither of these acts is pled with sufficient particularity to support the inference that a pattern of indictable, federal crimes have occurred.

*First*, as discussed above, Plaintiffs' allegations about the letters fail to specify the time and place the letter to the Plaintiffs, if any, was sent, and who was responsible for sending the letter. Such blending of the defendants violates Rule 9(b): "Blending the identities of the defendants in her allegations of fraud… is precisely the kind of vagueness in fraud pleadings Rule 9(b) was designed to prevent." *Cisneros*, 2020 WL 5015283 at 9.

The allegations similarly fail to specify in what manner the letter misled the Maloneys, who do not allege they received it. They also fail to allege what was criminal about sending a letter asking for information about payments and summarizing recorded real estate covenants. Even if Plaintiffs had alleged the required specificity, the allegations demonstrate these letters were not of a continuing nature, but a one-time mailing. Plaintiffs allege the letters were sent only once, and at one time, in October 2016. Compl. ¶ 66 and Ex. E-1. Though Plaintiffs

later plead the "Mail Fraud and Wire Fraud, as specifically pled herein, occurred on hundreds of occasions," ¶ 173, they fail to plead any specifics to back up this conclusory statement. Thus, the alleged mail fraud does not constitute a predicate, indictable, criminal act supportive of the Plaintiffs RICO claim.

*Second*, Plaintiffs describe the wire fraud with even less particularity than the mail fraud. Plaintiffs fail to identify a single date or occurrence when such "known examples" of wire fraud occurred, instead generally alleging the "Wire Fraud likely occurred on hundreds of occasions." ¶ 174. Moreover, it is not even conclusively alleged that the wire fraud misled the Plaintiffs as required to constitute a predicate act. "[P]leading a civil RICO claim requires that Plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity—here, the misrepresentation of the Passenger Usage Fee through mail and wire fraud—was the ***but-for and proximate cause of the plaintiffs' injuries***." *Ray*, 836 F.3d at 1349 (emphasis added). Thus, the alleged wire fraud is likewise not a predicate, indictable, criminal act supportive of the RICO claim.

### C.    Plaintiffs' RICO Conspiracy Claim Should Also be Dismissed

In addition to dismissing Plaintiffs' substantive RICO counts, the Court should also dismiss Plaintiffs' single-paragraph allegation of a conspiracy to violate RICO, shoehorned into the last paragraph of the Complaint. ¶ 178. In *United States*

*v. Browne*, the Eleventh Circuit held that the "touchstone of liability is ***an agreement to participate*** in a RICO conspiracy," which requires an allegation and proof that each defendant agreed on the overall objective of the conspiracy.  505 F.3d 1229, 1264 (11th Cir. 2007) (emphasis added).  *See also Jackson*, 372 F.3d at 1269 (failure to allege "agree[ment] to violate…substantive provisions of the RICO laws" is "fatal").  More importantly, "parties cannot be found guilty of conspiring to commit an act that is not itself against the law."  *Id.*  And a complaint that "simply concludes that the defendants conspired and confederated to commit conduct which in itself does not constitute a RICO violation" must be dismissed.  *Id.*

Plaintiffs allege no additional facts that would save their conspiracy claims. They make no attempt to state when, where, or how any of the Defendants supposedly reached an agreement to commit federal crimes and violate RICO and fail to state a single individual who entered into such an agreement.  Moreover, Plaintiffs' conspiracy allegations fail for many of the same reasons as their substantive allegations, such as the absence of any plausible allegation the Defendants agreed to conspire to violate RICO, instead of merely operating a lawful business.

-24-

## **CONCLUSION**

The Court should dismiss this case under Federal Rule 12(b)(6).  The allegations are the vague, conclusory, shotgun-style pleadings the Eleventh Circuit has long-prohibited.

Respectfully submitted, this 25th day of September 2020.

**CONLEY GRIGGS PARTIN LLP**

*/s/ James T. Cox*
RANSE M. PARTIN
Georgia Bar No. 556260
JAMES T. COX
Georgia Bar No. 296191

4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327-3007
Phone: 404-467-1155
Fax: 404-467-1166
ranse@conleygriggs.com
james@conleygriggs.com

***Counsel for Defendants Tallulah River Co., Inc., Randolph Jackson, Patricia Jackson, River Falls at the Gorge, Inc., Dana Pacciotti, and Shea Smith***

**HURT STOLZ, P.C.**
James W. Hurt, Jr.
Georgia Bar No. 380104
1551 Jennings Mill Road
Unit 3100B
Watkinsville, Georgia 30677

Phone:  706-395-2750
Fax:  706-996-2576
jhurt@hurtstolz.com

***Attorney for Defendants Robert Gayle,
Torri Gayle, and Windy Sky Rentals, LLC***

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that I have this date served a copy of the foregoing **Brief In Support Of Motion To Dismiss By Defendants Tallulah River Co., Inc., Randolph Jackson, Patricia Jackson, Robert Gayle, Torri Gayle, And Windy Sky Rentals** by using the Court's CM/ECF filing system which automatically serves all counsel of record.  The undersigned further certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1(B) of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

This 25th day of September, 2020.

*/s/ James T. Cox*
James T. Cox